UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

| | |
|---|---|
| MICHAEL BRUCE VORCE, #09764-089, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LAKE MICHIGAN CREDIT UNION, ) <br> et al., ) <br> ) <br> Defendants. ) <br> _____) | Case No. 1:13-cv-132 <br><br> Honorable Robert Holmes Bell <br><br> **REPORT AND RECOMMENDATION** |

On November 6, 2008, Michael Bruce Vorce was named in a fifteen-count Indictment charging him with financial institution fraud, money laundering, and wire fraud. (*United States v. Vorce*, case no. 1:08-cr-282). The grand jury charged Vorce with executing an elaborate scheme to defraud federally-insured financial institutions by procuring millions of dollars of loans for himself and controlled companies on the basis of a massive fraudulent scheme. Count 8 of the Indictment charged that in 2006 and 2007, Vorce defrauded Lake Michigan Credit Union of an amount exceeding $4.7 million by obtaining loans secured by nonexistent collateral. Pursuant to a plea agreement filed on June 17, 2009, Vorce agreed to plead guilty to counts 6 and 13, charging him with bank fraud and money laundering in connection with loans procured from Macatawa Bank, as well as to a criminal Information charging him with wilful failure to file an income tax return after accruing gross income exceeding $11 million in 2006. In exchange, the government agreed to dismiss all other counts. Judge Robert Holmes Bell accepted the guilty plea, and by judgment

entered October 29, 2009, sentenced Vorce to a prison term of 144 months, in addition to ordering restitution exceeding $24 million.

Mr. Vorce is now an inmate at the Federal Correctional Institution in Milan, Michigan, where he is serving the sentence imposed by Judge Bell in the criminal case. On February 7, 2013, he filed a 62-page civil complaint in the present case, purporting to represent members of the Lake Michigan Credit Union who suffered a loss as a result of Mr. Vorce's own fraud. The complaint alleges federal and state causes of action, including RICO claims, against the credit union and numerous officers and employees, on behalf of credit union members. In the complaint, Mr. Vorce sets forth the details of his scheme to defraud the credit union. The heart of his claims against the credit union and its officers is summarized in paragraph 12 of the complaint:

> In general, the LMCU Defendants, through their operation and management of the LMCU Enterprise, willingly and/or negligently allowed Vorce to use Lake Michigan Credit Union for bank fraud and money laundering, actively and/or negligently facilitated that bank fraud and money laundering because Vorce was a significant LMCU member; aided and abetted said bank fraud and money laundering; received stolen property or other wrongfully acquired property from Vorce; aided and abetted Vorce's efforts to convert stolen property; failed to file Suspicious Activity Reports ("SARs") regarding Vorce and his affairs as required by relevant banking laws, or, alternatively, filed SARs regarding Vorce but nonetheless continued to do business with him; perpetrated a fraud on this Court through material misrepresentations in order to derive a financial benefit from Vorce's bank fraud and money laundering in conjunction with his Intelepeer, Inc. ("Intelepeer") stock shares; and generally failed to adhere to appropriate standards for federally insured credit unions and financial institutions, including but not limited to the standards of a prudent and reasonable credit union officer, director and/or employee.

(Compl. ¶ 12, docket # 1). Mr. Vorce purports to represent the "interests of all current and future Lake Michigan Credit Union members" in this case. (*Id.*, ¶ 8). The complaint makes it clear, however, that Mr. Vorce seeks no relief on his own behalf. Rather, he asks for an award of damages

for the actual loss incurred by members of the credit union, specifically excluding Mr. Vorce himself. (*Id.*, Prayer for Relief, ¶¶ 1, 10).

The court has granted plaintiff leave to proceed *in forma pauperis*, in light of his indigence. Under the provisions of federal law, PUB. L. No. 104-134, 110 STAT. 1321 (1996), the court is required to dismiss any action brought under federal law *in forma pauperis* if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). An action will be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is frivolous within the meaning of section 1915(e)(2) when it is based on either an inarguable legal conclusion or fanciful factual allegations. 490 U.S. at 325. A complaint that fails to allege "'enough facts to state a claim to relief that is plausible on its face'" must be dismissed for failure to state a claim. *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A plaintiff must 'plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A plaintiff falls short if []he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79). In applying these standards, the court must read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

**Discussion**

Plaintiff's complaint suffers from numerous, fatal defects. Discussion of two such defects is sufficient to justify dismissal of plaintiff's complaint as frivolous.

**1.**

First, and most fundamentally, plaintiff lacks standing to assert the claims set forth in the complaint. A plaintiff must meet both constitutional and prudential requirements to establish individual standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To meet the minimum constitutional standards for individual standing under Article III:

> a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *accord Already LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). To meet the prudential requirements for standing, as developed by the Supreme Court, a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). Furthermore, the complaint must fall within the "zone of interests" to be protected or regulated by the statute or constitutional guarantee in question. *See Smith v. Jefferson County Bd. of Sch. Comm'rs*, 641 F.3d 197, 206-07 (6th Cir. 2011) (*en banc*).

Plaintiff's own complaint makes it patently obvious that he has not suffered any injury of any kind that is fairly traceable to the challenged actions of the defendants. To the contrary,

plaintiff was the beneficiary of his own fraud, and any laxness or negligence by the credit union or its officers benefitted plaintiff by allowing the fraud to proceed undetected. The complaint does not allege that plaintiff suffered any injury at the hands of defendants. The only injured parties, according to plaintiff, were the members of the credit union. Plaintiff thus lacks the "irreducible constitutional minimum of standing" which consists of "an injury in fact" suffered by plaintiff himself. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 102-03 (1998).

Although the Supreme Court has delineated narrow exceptions to the prudential limitation on third-party standing, the Court has allowed a plaintiff to assert the rights of a third party only where "practical obstacles prevent a party from asserting rights on behalf of itself." *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). To fit within this exception, a plaintiff must show three elements: first, injury in fact; second, a close relationship with the third party whose rights he asserts; and third, that the third party has no forum to protect its own interests. *Id.*; *see Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623-24 n.3 (1989). Plaintiff's complaint obviously fails on each of these necessary elements. Plaintiff alleges no injury in fact on his own behalf -- to the contrary, he expressly eliminates himself as an injured party or as one to whom relief may be granted. Second, plaintiff alleges no close relationship with the members of the credit union. No case has ever held that the perpetrator of a fraud enjoys a close relationship with his victims, such that he can represent their interests. Finally, plaintiff alleges no reason to conclude that the credit union members lack a forum to protect their own interests.

Plaintiff, the admitted perpetrator of a massive scheme to defraud the Lake Michigan Credit Union, lacks standing to assert the claims of the members of that credit union who suffered a loss as a result of plaintiff's criminal conduct.

**2.**

Even if plaintiff were able to establish constitutional and prudential standing, no federal court would allow him to represent the interests of absent parties. Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for class actions, a procedural device by which one party may represent the interest of absent parties, called class members. The strictures of Rule 23 are largely dictated by constitutional concerns, arising under the Due Process Clause. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Hansberry v. Lee*, 311 U.S. 32, 40-44 (1940). In order to represent the absent members of the Lake Michigan Credit Union, therefore, plaintiff would be required to meet the requirements of Rule 23 applicable to class actions. No court would ever allow plaintiff to do so, for two related reasons.

First, the claims of the named plaintiff must be "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement demands that the putative class representative be a member of the class and possess the same interests and suffer the same injury as absent class members. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012). The representative's interest must be aligned with those of the representative group such that the representative's pursuit of his own claims advances the interests of the class. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (*en banc*). In the present case, plaintiff clearly fails this test, as his claims (whatever they may be) are not typical of the claims of absent class members. Plaintiff was the admitted perpetrator of a massive fraud; the absent class members were the victims of the fraud. A party may not serve as class representative when, "[i]n significant respects, the interests of those within the single class are not aligned." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 636 (1997). Far from being aligned, the interests of Mr. Vorce and his victims are completely antagonistic.

Beyond this, fundamental notions of due process require that the representative party will "fairly and adequately protect the interests of the class." *See* FED. R. CIV. P. 23(a)(4). One may legitimately question whether a felon convicted of defrauding a financial institution can fairly and adequately protect the interests of that institution's owners. More fundamentally, the federal courts have consistently held that an unrepresented litigant may not act in a representative capacity. *See Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). The Sixth Circuit has repeatedly held that *pro se* prisoner litigants are inadequate class representatives. *See, e.g., Heard v. Caruso*, 351 F. App'x 1, 15 (6th Cir. 2009); *Garrison v. Michigan Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (collecting cases); *Marr v. Michigan*, No. 95-1794, 1996 WL 205582, at * 1 (6th Cir. Apr. 25, 1996) ("[A]n imprisoned litigant who is not represented by counsel may not represent a class of inmates because the prisoner cannot adequately represent the interests of the class.") (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)).

Consequently, even if plaintiff were deemed to have standing to assert claims on behalf of the members of the Lake Michigan Credit Union, due process concerns, as embodied in Fed. R. Civ. P. 23, would prevent him from being an appropriate representative of those absent parties. Plaintiff alleges no claim of his own, and his attempt to sue as representative of those he defrauded transcends the frivolous.

**Recommended Disposition**

Upon review of the complaint, I conclude that the claims set forth therein are frivolous within the meaning of 28 U.S.C. § 1915(e)(2). I therefore recommend that the complaint be dismissed with prejudice and that leave to appeal *in forma pauperis* be denied. A dismissal of this action would count as a "strike" under 28 U.S.C. § 1915(g).


Dated: February 20, 2013          /s/ Joseph G. Scoville
                                  United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).